UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO: 2:08-cv-541-FtM-99-SPC

MARK TAPLETT,

Plaintiff,

v.

TRG OASIS (Tower Two) LTD.,
a Florida Limited Partnership; TRG
OASIS (TOWER TWO), LLC, a
A Florida Limited Liability Company;
THE RELATED GROUP OF FLORIDA, a
Florida general Partnership, d/b/a THE RELATED
Group, RELATED FLORIDA, LLC, a Florida
Limited Liability Company, RELATED GENERAL
OF FLORIDA, LLC, a Florida Limited Liability
Company; THE RELATED COMPANIES OF
FLORIDA, INC., a Florida Corporation (hereinafter
"TRG, INC.") and ROBERTO ROCHA,

Defendants.
_________________________________/

**SECOND AMENDED COMPLAINT**

COMES NOW the Plaintiff, MARK TAPLETT, ("TAPLETT") by and through his undersigned attorney, and sues Defendants, TRG OASIS (Tower Two) LTD., a Florida Limited Partnership, (hereinafter "Tower Two L.P.") TRG OASIS (Tower Two), LLC, a Florida Limited Liability Company (hereinafter "Tower Two G.P."); THE RELATED GROUP OF FLORIDA, a Florida General Partnership d/b/a "The Related Group" (hereinafter "TRG"), RELATED FLORIDA, LLC, a Florida Limited Liability


RYAN & RYAN ATTORNEYS, P.A.
631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

Company, (hereinafter "TRG Partner No. 1"), RELATED GENERAL OF FLORIDA, LLC, a Florida Limited Liability Company, (hereinafter "TRG Partner No. 2"); THE RELATED COMPANIES OF FLORIDA, INC., a Florida Corporation (hereinafter "TRG, INC."); and ROBERTO ROCHA and states:

**JURISDICTION, VENUE AND PARTIES**

1. This is an action arising under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. Sections 1701-20 ("ILSA"), and jurisdiction is appropriate under 28 U.S.C. Section 1331. Plaintiff also asserts a pendent state law claim for Breach of Contract.

2. Plaintiff, Mark Taplett is a resident of Palm Beach County, Florida.

3. Venue is proper with this Court because the property that is the subject of this action is situated in Fort Myers, Florida, and the contract between the parties that is the subject of this action was to be performed in the Middle District of Florida.

4. Mr. Taplett is the purchaser of a condominium unit (hereinafter "Unit" and/or the "Property") under the sale that forms the basis for this complaint. A copy of the contract setting forth the terms of the sale is attached hereto and incorporated herein as Exhibit "A".

5. Defendant, Tower Two, L.P., is a Florida Limited Partnership, whose principal place of business is 315 S. Biscayne Blvd, 3rd Floor, Miami, FL 33131 and at all times material hereto was doing business in Lee County, Florida.

6. Defendant, TOWER TWO, G.P., is a Florida Limited Liability Company whose principal place of business is 315 S. Biscayne Blvd, 3rd Floor, Miami, FL 33131 and doing business in Lee County, Florida.

7. Defendant TRG is a Florida general partnership with its principal place of business in Miami-Dade County, Florida and at all times material hereto was doing business in Lee County, Florida, and is otherwise *sui juris*.

8. Defendant TRG Partner No. 1 is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida and at all times material hereto was doing business in Lee County, Florida, and is otherwise *sui juris*.

9. Defendant TRG Partner No. 2 is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida and at all times material hereto was doing business in Lee County, Florida, and is otherwise *sui juris*.

10. Defendant TRG, INC. is a Florida Corporation with its principal place of business in Miami-Dade County, Florida and at all times material hereto was doing business in Lee County, Florida, and is otherwise *sui juris*.

11. Defendant Roberto Rocha ("Rocha") is an individual over eighteen years of age, who upon information and belief, resides in Miami-Dade County, Florida, and is otherwise *sui juris*.

12. On or about May 5, 2005, the Plaintiff paid a $47,690.00 deposit to Chicago Title Insurance Company to hold in escrow in order to reserve condominium unit 2904 at the Defendant's "Oasis Tower Two," Fort Myers Condominium, the "Unit".


RYAN & RYAN ATTORNEYS, P.A.
631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

13. Plaintiff executed the contract on or about July 12, 2005 to purchase Unit 2904 and made an additional deposit in the amount of $20,000.00 on the Unit.

14. Defendant Tower Two L.P. executed the contract on July 13, 2005.

15. In the latter half of 2005, the Plaintiff made an additional deposit in the amount of $67,690.00 on the Unit.

16. In accordance with the terms of the contract, the Plaintiff deposited a total of $135,380.00 with Tower Two L.P.'s escrow agent.

17. The undersigned law firm has been retained by the Plaintiff to represent him in this action and the Plaintiff has agreed to pay the undersigned law firm a reasonable fee for its services and to reimburse the undersigned law firm for all costs advanced in connection with this action.

18. In accordance with the terms of the contract and all statutes sued upon, Plaintiff will be entitled to an award of reasonable attorneys' fees if he is the prevailing party to this litigation.

19. All conditions precedent to the filing and/or maintenance of this action have been performed, waived or otherwise satisfied.

**COUNT I - VIOLATION OF 15 U.S.C. § 1703**
**(Formerly Count VI)**

20. Plaintiff realleges Paragraphs 1-19 above as if fully set forth herein.


RYAN & RYAN ATTORNEYS, P.A.
631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

21. Defendants are each developers as defined in 15 U.S.C. § 1701(5) in that Developer is a person who, directly or indirectly, sells, offers to sell, and advertises for sale units in a subdivision.[1]

22. Sometime in 2005, the Defendants, through a cooperative effort, began marketing the Development as part of a luxury five-tower, 17-acre tropical development on prime waterfront property known as Oasis.

23. Oasis is a subdivision as defined by 15 U.S.C. § 1701(3) of the Federal Interstate Land Sales Full Disclosure Act ("ILSA" or the "Act").[2]

24. Tower Two at Oasis consists of 240 units offered, marketed, promoted and sold to the public through the U.S. Mail, U.S. telephone lines, and other instrumentalities of interstate commerce as part of a common promotional plan as defined in 15 U.S.C. § 1701(4)[3].

25. TRG is one of the largest developers of condominium projects in the state of Florida and is one of the developers of Oasis.

---

[1] §1701(5) "developer" means any person who, directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots in a subdivision;

[2] §1701(3) "subdivision" means any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan;

[3] §1701(4) "common promotional plan" means a plan, undertaken by a single developer or a group of developers acting in concert, to offer lots for sale or lease; where such land is offered for sale by such a developer or group of developers acting in concert, and such land is contiguous or is known, designated, or advertised as a common unit or by a common name, such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan;


RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

26. TRG participated in the acquisition and permitting of the land where the condominium is located and the offering of all units in the Oasis subdivision, including but not limited to those in Tower Two. Specifically, TRG participated in devising the comprehensive and common promotional plan by which all units in the Oasis subdivision would be offered. It also promoted its fictitious and trademarked name, "The Related Group", as a factor to be considered by both Tower Two's construction lender and Mr. Taplett for purpose of deciding whether to finance and purchase the unit. Specifically the participation of TRG was used by all of the defendants to establish a perception of quality, value and the propensity for success.

27. TRG participated in the formation and orchestration of each of the single purpose entities that offered units in the Oasis Subdivision, including but not limited to Tower Two L.P. In doing so, TRG directly participated in offering the unit that is the subject of this claim.

28. TRG Partner No. 1 is one of the partners of TRG.

29. TRG Partner No. 2 is one of the partners of TRG.

30. Pursuant to Fl. Stat. §620.8306, TRG Partners Nos. 1 and 2 are jointly and severally liable for all acts of TRG.

31. TRG, INC. participated in the development and implementation of the common promotional plan as well as the orchestration of the formation and management of each of the single purpose entities that developed the property within the Oasis subdivision.


RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

32. TRG, INC. provided personnel and direction to each entity involved in the presentation of Oasis. TRG, INC. directly participated in offering of the Unit that is the subject of this claim. Specifically, TRG, Inc. directly participated in making the determination of the sales prices, the determination as to the form of the contracts and condominium documents to be used, the methods of advertising the property and the staffing and management of each of the single purpose entities that participated in the common promotional plan.

33. TRG and TRG, INC. acted in concert with each other and all other defendants herein to accomplish the development of the Oasis subdivision, including, but not limited to, Tower Two.

34. Roberto Rocha is an individual who directly participated in the creation and sale of the Unit that is the basis of this complaint. He was also personally involved in determining what information would and would not be provided to the Purchasers while promoting the unit. Mr. Rocha was personally involved in administering the protocol to be used for the offering of the subject unit to Mr. Taplett.

35. Mr. Rocha is an officer of TRG, Inc. and of Perez Ross Holdings LLC. Perez Ross Holdings LLC is the managing member of TRG Partner No. 1 and TRG Partner No. 2.

36. Defendant Rocha is affiliated with Tower Two L.P.

37. Tower Two L.P. is the single purpose entity formed to act as the lead developer of Tower Two, the condominium, which is situated in Oasis. All marketing

efforts for Tower Two of the subdivision were done in conjunction with other developers of Oasis as part of a comprehensive and common promotional plan.

38. Tower Two G.P. is the general partner of Tower Two L.P. As such, pursuant to Fl. Stat. §§ 620.1403 and 620.1404, all acts by TRG, Ltd. were carried out by its general partner that is jointly and severally liable for the acts of the partnership.

39. All acts of Tower Two L.P. and Roberto Rocha complained of herein were done at the direction of TRG and/or TRG, Inc.

40. The subject development does not qualify for any exemptions from the requirements set forth in section 1703 of the Act.

41. The sale is subject to the provisions of the Act and was therefore required to comply with it.

42. Plaintiff is a purchaser as defined by 15 U.S.C. section 1701 of the Act.

43. The Act is intended to protect the public and, pursuant to Florida Supreme Court law, should be liberally construed in favor of the public.

44. Each of the Defendants, by participating in the offering of the unit, had an obligation in accordance with the following provisions of the Act as well as its implementing regulations codified at 24 C.F.R., Chapter X, to wit:

i. to provide Plaintiff with a printed property report <u>in advance</u> of Plaintiff entering into the purchase agreement for the Property. See, 15 U.S.C. §§ 1703(a)(1)(B) and 24 CFR 1715.20(b). While prior versions of ILSA permitted delivery of the property report to purchasers either "in advance or at the time of his signing of any contract," the version of ILSA in effect when Plaintiff entered into the contract at issue did not include the language "at the time of his signing…," and instead required that the property reports be



RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

provided "in advance of the signing of any contract…" 15 U.S.C. §§ 1703(a)(1)(B).

ii. delivering the property report to Plaintiff in compliance with the Regulations set forth in 24 C.F.R. 1715.20(a), to wit:

Sec. 1715.20 Unlawful sales practices--regulatory provisions.

> In selling, leasing or offering to sell or lease any lot in a subdivision it is an unlawful sales practice for any developer or agent, directly or indirectly, to:
> (a) Give the Property Report to a purchaser along with other materials when done in such a manner so as to conceal the Property Report from the purchaser.

iii. delivering the property report to the purchaser before encouraging a purchaser to sing the contract. See 24 C.F.R. 1715.20(b), to wit:

Sec. 1715.20 Unlawful sales practices--regulatory provisions.

> In selling, leasing or offering to sell or lease any lot in a subdivision it is an unlawful sales practice for any developer or agent, directly or indirectly, to:
> (b) Give a contract to a purchaser or encourage him to sign anything before delivery of the Property Report.

iv. limit the Agreement's presale contingency to a period of 180 days. See 24 C.F.R. 1710.5;

v. include provisions in the contract that require the Developer to give the Plaintiff notice of any default or breach of contract by Plaintiff and the opportunity to cure the default or breach "within 20 days <u>after the date of receipt of such notice</u>" by Plaintiff. See 15 U.S.C. §1703(d)(2).

vi. to include within the printed promotional material used in connection with the sale of the property, a disclaimer reading as follows: "Obtain the Property Report required by Federal law and read it before signing anything. No Federal agency has judged the merits, or value, if any, of the property." See 24 C.F.R. § 1715.50 and 15 U.S.C. § 1703(a)(1);



RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

vii. to include the following information in the Oasis Property Report, to wit: (i) a map showing the division proposed and the dimensions of the lots to be covered by the statement of record and their relation to existing streets and roads; (ii) and a disclosure of the range of selling prices for lots in the subdivision. See 24 C.F.R. §§1710.209(g)(iii) and 1710.216(b).

viii. obligate itself in its contract to construct the common elements facilities featured as part of the common promotional plan. See 15 U.S.C. § 1703(a)(2)(D);

ix. to not present or omit to present information in a misleading manner. See 15 U.S.C. 1703(a)(2)(B).

45. Pursuant to the express language of the first paragraph of the contract, Mr. Taplett was directed to rely on the written representations contained in the documents required to be provided by Fl. Stat. §718.503. And, so he did.

46. In accordance with the express language of paragraph 36 of the contract, Plaintiff acknowledged that Tower Two would be adjacent to a marina.

47. In accordance with the express language of paragraph 40 of the contract, Plaintiff did not rely on any oral representations, but instead relied as directed, on the information set forth in the contract, the "brochures for the Condominium" and the documents required to be delivered under Fl. Stat. §718.503.

48. The brochure incorporated by reference into the contract states: "your community and Amenities (proposed): ... Marina (in permitting stage) with boat slips and easy access to the Gulf of Mexico."

49. The brochure incorporated by reference into the contract states: "About the Developer, The Related Group of Florida... " and displays a photograph of "Chairman



RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

and CEO, Jorge M. Perez" and numerous projects that Tower Two L.P. had nothing to do with. It also refers to the project as "Another RELATED project" and directs consumers to www.OasisCondo.com.

50. Despite a review of the public records, Jorge Perez appears to have n direct affiliation with Tower Two L.P.

51. Defendants, all acting in concert as Developers as defined by the Act, violated 15 U.S.C. § 1703(a)(2)(A) by employing a device, scheme or artifice to defraud Plaintiff.

52. Specifically, Defendants intentionally defrauded Plaintiff by representing in its brochure that it would provide river access via a marina.

53. TRG's official website, www.OasisCondo.com, espouses the virtues of the Project, advertising that Oasis residences will feature state-of-the-art designer finishes, imported Italian cabinetry and floor to ceiling windows with glass railing balconies. One of the primary features used by Defendants to market units in the Oasis subdivision was that the owners of units therein would have "access to the river via a marina with wet slips, a boat ramp, kayak and canoe storage."

54. Mr. Taplett reviewed the information developed and provided to him by the Defendants and was led to believe he was contracting to buy a unit in a subdivision that would be developed entirely with upscale homes and appurtenant amenities including a marina.

55. Mr. Taplett was misled by the information presented about the marina and by the manner in which it was presented.

56. Defendants did not contractually obligate themselves to construct the marina.

57. The Developer's building plans filed with the City of Fort Meyers' Building Department at the time it was marketing Oasis do not include any present or future plans to construct a marina.

58. The marina has never been constructed.

59. Defendants did not provide Plaintiff with the property report until the time it presented the contract for signature.

60. The property report was included in a large stack of documents without any special attention drawn to it relative to the other documents presented.

61. Mr. Taplett did not realize the property report was provided at that time, nor did he review it or all other documents provided in advance of signing the contract.

62. Defendants encouraged Mr. Taplett to sign the contract before he had any reasonable opportunity to review the property report.

63. The contract prepared and employed by Defendant does not include the cure period after default in the manner required by the Act.

64. The contract prepared and employed by the Defendants contains a presale contingency period of one year.

65. The printed promotional materials do not include the following statements, to wit:

> "Obtain the Property Report required by Federal law and read it before signing anything. No Federal agency has judged the merits, or value, if any, of the property." See 24 C.F.R. § 1715.50 and 15 U.S.C. § 1703(a)(1)



RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

66. The Oasis property report does not include a map showing the division proposed and the dimensions of the lots to be covered by the statement of record.

67. The Oasis property report does not include a disclosure of the range of selling prices for the units/lots in the subdivision.

68. Furthermore, The City of Fort Myer's approval of the Development was conditioned upon the Developer's obligation to provide 22 affordable housing units, either on-site or off-site, but within two miles of the Development, or to alternatively pay a specified sum of money to the city.

69. All Defendants named herein were aware of this obligation and that it ran with the land where the subdivision is situated.

70. The City of Fort Myers, its successors or assigns, are the beneficiaries of deed restrictions and may enforce the deed restrictions and restrictive covenants relating to the affordable housing units by action of law.

71. To date the Developer has been unable to fulfill its affordable housing obligation, pursuant to the ordinance, by building the affordable units off-site.

72. The fact that each owner of a unit in Oasis may be legally obligated to pay for the construction of such affordable housing is a material fact to Mr. Taplett.

73. Developer never disclosed, in either the prospectus, declaration of condominium, marketing materials or any of its offering documents, that affordable housing units may be located within the Development, nor at the unit owner's expense.

74. The fact that the "affordable housing" may be constructed within Oasis is

a material fact to Mr. Taplett because he believes lower priced[4], and presumably lesser quality, homes within the subdivision would negatively impact property values.

75. Had Mr. Taplett known of the fact a governmental agency had the authority to require construction of the affordable housing on site and/or at his expense, he would not have purchased the Unit.

76. The Defendants' omission of the information about affordable homes as set forth above was a breach of the Defendants' duty under Title 15, Section 1703(a)(2)(B).

77. The Defendants' use of false statements about the exclusiveness of the property, and the marina facility in its promotional materials constitutes an artifice to defraud Plaintiff in violation of 15 U.S.C. § 1703(a)(2)(A).

78. Defendants' failure to appropriately disclose the relevant information about the cost and location of the permit requirement for construction of affordable housing is in violation of 15 U.S.C. § 1703(a)(1)(D).

79. The Developers' false statements regarding the construction of river access via a marina and an exclusively upscale community were false statements of material fact.

80. Developers' false and misleading advertising also constitutes a violation of 15 U.S.C. § 1703(a)(2)(B) which prohibits the Developer from obtaining money or property by means of any untrue statement of a material fact.

[4] Increasing the price range of the units/lots in the subdivision even more that what Mr. Taplett presumed.



RYAN & RYAN ATTORNEYS, P.A.

631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

81. Plaintiff justifiably relied, to his detriment, on the Developers' false statements and were induced to enter into the Agreement based on these representations.

82. The Developers' presentation of the subdivision as a project as being developed by TRG and/or TRG, INC. was also false and misleading. Although TRG and TRG, INC. are developers as defined by the Act, at no time material hereto did they undertake any contractual obligations to any consumer of the offering or to any governmental permitting agency.

83. The Defendants as the controlling persons and entities of the subdivision knew or should have known that advertising material published under the name and authority of The Related Group was false and misleading.

84. Mr. Taplett relied on the written representations that Oasis was a community being developed by TRG and/or TRG, INC.

85. The Plaintiff has demanded the return of the deposit at issue in this case, and the Defendants have failed to return any of the deposit. (A true and correct copy of the demand letter is attached hereto as Exhibit "B").

WHEREFORE Plaintiff demands judgment for damages and equitable relief and any and all relief available pursuant to § 1709(a) against Defendants, including but not limited to an injunction prohibiting Defendants from enforcing the contract, restitution, damages, costs, attorneys' fees and such further relief as the Court may deem just and proper.

**COUNT II – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(Formerly Count VII)**

86. Plaintiff realleges paragraphs 1-19 and 21-81 above as if set forth herein.

87. Chapter 501, Florida Statutes, known as the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is to be liberally construed to protect the consuming public, such as the Plaintiff in this case, from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

88. By its very nature, FUDTPA violations do not exist in the absence of a violation of some other law, rule or regulation prohibiting unfair or deceptive practices.

89. In the event Defendants violated ILSA, as alleged with specificity in Count I above, they also committed *per se* violations of FDUTPA pursuant to section 501.203(3)(c).

90. The actions set forth in the preceding Count of the complaint were likely to deceive a consumer, and have deceived the Plaintiff. This conduct constitutes a violation of FDUTPA.

91. Plaintiff has been damaged by Developer's unfair and/or deceptive trade practices, including monetary losses, interest on their deposits, loss of use of the deposits, loss of business opportunities, inconvenience, frustration, and other incidental and consequential damages.

92. Pursuant to Fl. Stat. §501.211(i), Plaintiff is entitled to injunctive relief for a violation of FDUTPA.


RYAN & RYAN ATTORNEYS, P.A.
631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

WHEREFORE Plaintiff demands judgment against Defendants for all damages and equitable relief available under applicable law, including but not limited to, injunctive relief preventing Defendants from enforcing the contract sued upon, restitution, compensatory damages, incidental and consequential damages, attorneys' fees pursuant to the Florida Deceptive and Unfair Trade Practices Act, costs, interest, and such further relief as the Court may deem just and proper.

**COUNT III – BREACH OF CONTRACT**
**(Against Defendants Tower Two, L.P. and Tower Two G.P.)**
**(Formerly Count X)**

92. Plaintiff realleges paragraphs 1-19 as if set forth herein.

93. A contract exists between the Plaintiff and Tower Two L.P. (See Exhibit "A".)

94. Under Paragraph 13 of the contract, if the contract is breached by buyer, the seller is obligated to return deposit monies in excess of 15% of the purchase price.

95. Plaintiff has not closed on the subject property, and to the extent the contract is valid, is in default of the same.

96. Plaintiff demanded the return of the monies in excess of 15% of the purchase price. (See Exhibit ("B")

97. If the contract between Tower Two, L.P. and Plaintiff is valid, Plaintiff's demand for a return of a portion of his deposits was an anticipatory breach of said contract.

98. Such breach was effective upon delivery of said demand.


RYAN & RYAN ATTORNEYS, P.A.
631 U.S. Highway One, Suite 100, North Palm Beach, FL 33408• Telephone 561-841-3420 • Facsimile 561-841-3424

99. By the very nature of the obligation created by paragraph 13, the duty to return that portion of the deposit after a default by buyer, such breach did not relieve Tower two L.P. from the obligation to perform such obligation.

100. Defendants have failed to return the deposit monies in excess of 15% of the purchase price.

101. Defendant Tower Two L.P.'s failure to return that portion of the deposit demanded constitutes a breach of the agreement between the parties.

102. Plaintiff has been damaged by the Defendants' failure to return 5% of the purchase price

WHEREFORE Plaintiff seeks a judgment that the Agreement has been breached and demand the return of 5% of the purchase price from his earnest money deposits, together with costs, interest, attorney fees and such further relief as this Court may deem just and proper.

**RYAN & RYAN ATTORNEYS, P.A.**
Attorney for the Plaintiff
631 U.S. Highway One, Suite 100
North Palm Beach, FL 33408
(561) 841-3420
(561) 841-3424 fax

By: /s/ James D. Ryan
JAMES D. RYAN
Florida Bar No. 976751
*jdr@attyryans.com*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**RYAN & RYAN ATTORNEYS, P.A.**
Attorney for the Plaintiff
631 U.S. Highway One, Suite 100
North Palm Beach, FL 33408
(561) 841-3420
(561) 841-3424 fax

By: /s/ James D. Ryan
JAMES D. RYAN
Florida Bar no. 976751
*jdr@attyryans.com*

**SERVICE LIST**

**Taplett v. TRG Oasis (Tower Two), LTD.**
**Case No.: 2:08-CV-00541-FtM-99SPC**

Betsy L. McCoy
Florida Bar No. 813036
E-mail: bmccoy@relatedgroup.com
315 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305-533-0026
Facsimile: 305-533-0086
Attorney for Defendant

Gary A. Woodfield
Florida Bar No. 563102
E-mail: gwoodfield@eapdlaw.com
C. Cory Mauro
Florida Bar No. 384739
E-mail: cmauro@eapdlaw.com
Edwards Angell Palmer & Dodge LLP
One North Clematis Street, Suite 400
West Palm each, FL 33401
Telephone: 561-833-7700
Facsimile: 561-655-8719